UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SECURITYPOINT MEDIA, LLC

      Plaintiff,

v.                                                                    Case No.  8:07-cv-444-T-24TGW

THE ADASON GROUP, LLC,
THE CONNER GROUP, and
STEPHEN CONNER

      Defendants,

_____/

## ORDER

This cause comes before the Court on Plaintiff Securitypoint Media, LLC's Motion to

Dismiss the Third and Fourth Counterclaims asserted by Defendants The Adason Group, LLC,

The Conner Group, and Stephen Conner.[1]  (Doc. No. 47.)  Defendants oppose the motion. (Doc.

No. 49.)  With the Court's permission, Plaintiff filed a reply.  (Doc. No. 52.)

## I.      Background

Plaintiff SecurityPoint Media, LLC is a vendor seeking to participate in a Pilot Program

proposed by the Transportation Security Administration (TSA), under which the TSA would

require private vendors to provide security bins and other equipment to be used in its security

screening process in exchange for permission to place advertisements on those security bins.

Plaintiff obtained U.S. Patent No. 6,888,460 (the '460 Patent) entitled "Advertising Trays for

Security Screening," which covers its "SecureTray System."  That patent sets forth a

method/process by which security trays, which are adapted to display advertisements, are used to

_____

[1]The Court denies Plaintiff's request for oral argument on this motion, as it can be
decided on the basis of the written memoranda.  M.D. Fla. Loc. R. 3.01(j).

screen passengers' articles at security checkpoint areas in U.S. airports.

Defendant The Adason Group, LLC is a company that provides advertising solutions to its customers, including clients in the airport industry.  The Adason Group, LLC is seeking to secure contracts with airport operators to provide unique security bins for use by the TSA in the Pilot Program.  Defendant The Conner Group, and its owner and founder, Defendant Stephen Conner, assist The Adason Group, LLC in advertising and promoting these security bins.

On March 12, 2007, Plaintiff filed this suit against Defendants for patent infringement of its '460 Patent.  Plaintiff alleges patent infringement, false marketing, violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), misleading advertising in violation of Florida Statute § 817.41, violation of Florida's deceptive and unfair trade practices act, Florida Statute § 501.201, and common law unfair competition.

On April 2, 2007, Defendants The Conner Group and Stephen Conner filed their answer and counterclaims.  (Doc. No. 15.)  They asserted two counterclaims for declaratory relief and a counterclaim for a violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.  They alleged that Plaintiff filed a "baseless and sham lawsuit and sought to wrongfully monopolize or attempt to monopolize a part of the trade or commerce among the several states."  On April 4, 2007, Defendant The Adason Group, LLC filed its answer and counterclaims. (Doc. No. 16.)  The Adason Group, LLC pled nine counterclaims against Plaintiff, two of which asserted violations of the Sherman Act.  The Adason Group similarly alleged that Plaintiff filed a baseless and sham lawsuit in an attempt to monopolize trade.

On April 23, 2007, Plaintiff moved to dismiss Defendants' antitrust counterclaims on the same grounds that form the basis of the instant motion.  (Doc. Nos. 19, 20.)  Defendants did not

2

oppose the motion, but rather, elected to file amended counterclaims.  (Doc. No. 24, 25.)  The Court denied Plaintiff's motions to dismiss as moot and ordered Defendants to file their amended counterclaims on or before May 21, 2007.  (Doc. Nos. 26, 35.)

On that date, Defendants filed their First Amended Counterclaims.  (Doc. Nos. 32, 33.) In their Third and Fourth Counterclaims, Defendants again allege monopolization and attempted monopolization in violation of the Sherman Act.  Defendants allege that Plaintiff contacted "prospective participants in the TSA Pilot Program, falsely representing the nature and scope of its patent rights."  Plaintiffs allegedly threatened prospective participants that "their acquisition of security bins would infringe the '460 patent" and "threatened to initiate lawsuits against prospective participants in the TSA Pilot Program" if they acquired security bins from The Adason Group, LLC.  As a result of these threats, Defendants allege, prospective participants refused to acquire security bins from The Adason Group, LLC.  Furthermore, Defendants allege that "Security bins are a relevant product market," that the "relevant geographic market is the United States," and that Plaintiff's share of this market is "in excess of 70%," such that Plaintiff "has monopoly power" in the market.

## III.   Discussion

Plaintiff now moves to dismiss Defendants' Third and Fourth Counterclaims for failure to state a claim for a violation of the Sherman Act.  Plaintiff argues that Defendants have failed to allege an economically feasible relevant market and failed to meet a heightened pleading standard that is applicable when a claim implicates the *Noerr-Pennington* doctrine.[2]  Plaintiff

_____

[2]This doctrine holds that a litigant is immune from antitrust liability for the filing of an allegedly frivolous lawsuit unless the litigation is "objectively baseless."  *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61, 113 S. Ct. 1920, 123 L. Ed.

asserts that the counterclaims should be dismissed with prejudice because permitting Defendants

leave to amend for the second time would be futile.

Defendants respond that they have sufficiently alleged a relevant market under the

Sherman Act (i.e., the provision of security bins that meet TSA standards), that they have

narrowly delineated the products at issue (i.e., security bins that meet TSA standards), and that

they have described the groups of providers who have the actual or potential ability to take

significant amounts of business away from each other (i.e., Plaintiff and Defendants).

Furthermore, Defendants argue that they have sufficiently pled the "sham litigation" exception to

the *Noerr-Pennington* doctrine, and thus, Plaintiff is not immune from antitrust liability.

### A.      Standard of Review

In deciding a motion to dismiss, the district court is required to view the complaint in the

light most favorable to the plaintiff.  *Murphy v. Federal Deposit Ins. Corp.*, 208 F.3d 959, 962

(11th Cir. 2000).  The Federal Rules of Civil Procedure do not require a claimant to set out in

detail the facts upon which he bases his claim.  Instead, Rule 8(a)(2) requires a short and plain

statement of the claim showing that the pleader is entitled to relief in order to give the defendant

fair notice of what the claim is and the grounds upon which it rests.  *Bell Atlantic Corp. v.

Twombly*, __ U.S. __, __, 127 S. Ct. 1955, 1964 (2007) (citation omitted).  As such, a plaintiff is

required to allege "more than labels and conclusions, and a formulaic recitation of the elements

of a cause of action will not do."  *Id.* at __, 127 S. Ct. at 1965 (citation omitted).  While the

Court must assume that all of the allegations in the complaint are true, dismissal is appropriate if

the allegations do not "raise [the plaintiff's] right to relief above the speculative level."  *Id.*

_____

2d 611 (1993).

(citation omitted).  "Rule 12(b)(6) dismissals are particularly disfavored in fact-intensive antitrust cases." *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1056, 1070 (11th Cir. 2004).

### B.       Whether Defendants Have Sufficiently Alleged a "Relevant Market"

To succeed on a claim for violation of Section Two of the Sherman Act by monopoly, the plaintiff must prove that the defendant (1) possessed monopoly power in the relevant market; and (2) willfully acquired or maintained its monopoly power "as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident. *Levine v. Ctr. Fla. Med. Affiliates*, 72 F.3d 1538, 1555 (11th Cir. 1996) (quotation and citation omitted).  To state a claim for attempted monopoly under Section Two, a claimant must plead facts showing that (1) "the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuilian*, 506 U.S. 447, 456, 113 S. Ct. 884, 122 L. Ed. 2d 247 (1993).

"[T]he heart of a monopolization claim involves proof that the defendant has acquired or maintained an unlawful monopoly in the relevant market." *Moecker v. Vehicle Safety Sys. Inc.*, No. 5:97-cv-329, 2000 U.S. Dist. LEXIS 21192, at *5 (M.D. Fla. Sept. 20, 2000).  Thus, "the definition of a relevant market is critical" to the survival of Section Two Sherman Act claims. *Id.* "The relevant market is defined by both a product and a geographic dimension." *T. Harris Young & Assocs., Inc. v. Marquette Elec., Inc.*, 931 F.2d 816, 823 (11th Cir. 1991).  "Defining a relevant product market is primarily a process of describing those groups of producers which, because of the similarity of their products, have the ability–actual or potential–to take significant

amounts of business away from each other." *U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*, 7 F.3d 986, 995 (11th Cir. 1993) (quotation and citation omitted). "The definition of the relevant market is essentially a factual question." *Id.* at 994.

In their Third and Fourth Amended Counterclaims, Defendants defined the relevant market with the following statement: "Security bins are a relevant product market." (Am. Counterclaims ¶ 32.) They further allege that the relevant geographic market is the United States, and that Plaintiff's share of this market "is in excess of 70%." (*Id.* at ¶¶ 33, 34.) However, in their memorandum in opposition to the motion to dismiss, Defendants attempt to revise their definition of the relevant market as a market for the "provision of security bins meeting standards set by the TSA Pilot Program." (Doc. No. 49, p.6.) "It is axiomatic that a plaintiff cannot amend the complaint by arguments made by counsel in opposition to a motion to dismiss." *Kuhn v. Thompson*, 304 F. Supp. 2d 1313, 1321 (M.D. Ala. 2004).

Nevertheless, Plaintiff argues that either description of the relevant product market is insufficient because Plaintiff does not participate or own a patent in the market for "security bins." Rather, Plaintiff acquires security trays from third-party providers and incorporates them into its patented "SecureTray System," transforming them from simple security trays into a single component of a larger, integrated system for airport security screening. In support of this position, Plaintiff cites *Spanish Broadcasting System of Florida, Inc. v. Clear Channel Communications, Inc.*, 376 F.3d 1056 (11th Cir. 2004), a case in which the Eleventh Circuit affirmed the dismissal of an attempted monopolization claim because the defendant did not participate in the relevant market. Alternatively, Plaintiff argues, even accepting Defendants' revised market definition, that market is not an economically feasible market because it does not

include available substitutes.

Viewing the Counterclaims in the light most favorable to Defendants, the Court

concludes that they have sufficiently alleged a relevant market in which Plaintiff participates to

withstand dismissal.  Defendants allege that the relevant market is in security bins and that such

bins "are unique in that they must be capable of displaying advertisements while conforming to

the regulations and standards set forth in the TSA Pilot Program."  (Am. Counterclaims at ¶ 14.)

Defendants specifically allege that Plaintiff "is offering to provide to airport, airport operators

and others, among other things, security bins which are capable of displaying advertising."  (*Id.*

at ¶ 13.)  Accepting these allegations as true, and viewing them as a whole, Defendants have

adequately alleged that Plaintiff has participated in the relevant market.  *Spanish Broadcasting*

*System of Florida, Inc.* is distinguishable because there the plaintiff altogether failed to allege

participation in the relevant market and there was "no question" that the defendants did not

participate in the market.  Accordingly, Defendants' allegations are sufficient to raise their right

to relief "above the speculative level" and to provide Plaintiff with sufficient notice of the nature

of the claims against it and the grounds upon which they rest.  *Bell Atlantic Corp.*, __ U.S. at __,

127 S. Ct. at 1965.

Generally, "[t]he relevant market is a question of fact for the jury."  *Ad-Vantage Tel.*

*Directory Consultants, Inc. v. GTE Directories Corp.*, 849 F.2d 1336, 1341 (11th Cir. 1987).

Plaintiff has raised important concerns regarding the ultimate determination of whether

Defendants have proven an economically feasible relevant market.  These issues, however,

require the Court to make factual determinations that are more properly analyzed not on the face

of the pleadings, but rather, on the record as a whole at the summary judgment stage.  *See Andrx*

*Pharms., Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1236 (11th Cir. 2005) (recognizing that

"antitrust cases are 'fact-intensive,' and require appropriate market analysis, and therefore are

typically inappropriate for a Rule 12 dismissal") (quotations and citations omitted); *Moeckler*,

No. 5:97-cv-329, 2000 U.S. Dist. LEXIS 21192, at *7 ("The definition of the relevant market is

a factual question dependent upon the special characteristics of the industry involved.").

> **B.      Whether Defendants' Counterclaims Are Barred by *Noerr-Pennington***

Plaintiff also argues that Defendants' Sherman Act Counterclaims should be dismissed

because they are barred by the *Noerr-Pennington* doctrine.  Under that doctrine, a patent holder

is immune from antitrust liability when it sues to enforce its constitutionally-granted patent

rights.  *Andrx Pharms., Inc.*, 421 F.3d at 1233-34.  An exception to *Noerr-Pennington* immunity

exists, however, where the patent holder engages in "sham litigation."  *Id.*  To establish the

"sham litigation" exception, a claimant must prove that: "(1) the lawsuit is objectively baseless

in the sense that no reasonable litigant could realistically expect success on the merits; and (2)

the party bringing the allegedly baseless suit did so with a subjective motivation to interfere

directly with the business relationships of a competitor."  *Id.* (quotations and citations omitted).

Relying heavily on the Ninth Circuit case of *Franchise Realty Interstate Corp. v. San*

*Francisco Local Joint Executive Board of Culinary Workers*, 542 F.2d 1076, 1082 (9th Cir.

1976), Plaintiff contends that a heightened pleading standard applies to allegations of "sham

litigation."  Under that standard, "allegations of the specific activities, not protected by *Noerr*"

that give rise to the alleged liability are required.  *See id.*  Plaintiff argues that, despite having

had two opportunities to plead their Counterclaims, Defendants have failed to meet this

heightened pleading standard.  According to Plaintiff, Defendants have alleged only that Plaintiff

initiated litigation and warned alleged infringers of potential litigation, both of which are actions protected by *Noerr-Pennington* immunity.

The Court declines to impose the heightened pleading standard set forth in *Franchise Realty*. *See City of Gainesville v. Fla. Power & Light Co.*, 488 F. Supp. 1258, 1267 (M.D. Fla. 1980) (declining to follow *Franchise Realty*, reasoning that "there is no need to construct such a heightened pleading burden if the courts simply apply the normal pleading standards"). Rule 8(a)(2) requires "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." "While courts have previously applied a heightened pleading requirement in antitrust cases, this view has subsequently been rejected in favor of applying Rule 8(a)'s notice pleading standard." *Andrx Pharms., Inc.*, 421 F.3d at 1234-35.

Here, Defendants have alleged that Plaintiff "has made baseless threats" and filed a "baseless" and "sham" lawsuit. Defendants allege that Plaintiff contacted prospective participants in the TSA Pilot Program, misrepresented its patent rights, and threatened to initiate lawsuits against them if they acquired security bins from Defendants. At this stage of the litigation, taking these allegations as true and viewing them in the light most favorable to Defendants, these allegations are sufficient under a notice pleading standard to establish that the suit is objectively baseless and was filed with the subjective motivation to interfere directly with the business relationships of a competitor. Whether Defendants can ultimately establish the "sham litigation" exception to *Noerr-Pennington* immunity is an issue for the trier of fact or that can be raised in a motion for summary judgment. *See e.g., VAE Nortrak N. Am., Inc. v. Progress Rail Servs. Corp.*, 459 F. Supp. 2d 1142, 1166 (N.D. Ala. 2006) (finding no evidence that the lawsuit was objectively baseless and therefore granting summary judgment under *Noerr-*

*Pennington*).

**IV.     Conclusion**

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion to Dismiss

Defendants' Third and Fourth Counterclaims (Doc. No. 47) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 7th day of August, 2007.

SUSAN C. BUCKLEW
United States District Judge

Copies to:

Counsel of Record